UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JACK E. TWARDOKUS,

       Petitioner,

v.                                  Case No:  2:11-cv-594-FtM-38CM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

       Respondents.[1]

_____/

## OPINION AND ORDER

### I.  Status

Petitioner Jack Twardokus (hereinafter "Petitioner"), proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. #1, Petition) challenging his judgment and conviction of burglary and sexual battery with a mask entered in the Twentieth Judicial Circuit Court, Collier County, Florida (case no. 02-2729-CF).   Petition at 1.   The Petition raises nine grounds for relief and some of those grounds contain subclaims.

Respondent filed a Response opposing the Petition (Doc. #13, Response) and attached supporting exhibits (Doc. #14, Exhs. 1-35) consisting of the record on direct

---

[1]Rule 2(a) of the Rules Governing Section 2254 Cases in United States District Courts provides that applicants in "present custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent."   The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition."   Rumsfield v. Padilla, 542 U.S. 426, 435 (2004).   This is "'the person with the ability to produce the prisoner's body before the habeas court.'"   Id. at 435-436. In this case, the proper Respondent is the Secretary of the Florida Department of Corrections.   The Florida Attorney General is dismissed from this action.

appeal and postconviction pleadings.   Respondent argues that the Petition fails to satisfy 28 U.S.C. § 2254 (d) and (e).   Respondent also argues that some grounds are not cognizable in a § 2254 petition to the extent the ground concerns matters of only state law (grounds 2 and 7(a), 8(a) and 9(a)), are unexhausted and now procedurally defaulted under Florida law ( grounds 2, 7(a), 8(a), and 9(a)).   Petitioner filed a Reply (Doc. #56, Reply).   This matter is ripe for review.

## II.   Applicable § 2254 Law

### A.   Deferential Review Required By AEDPA

Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Abdul-Kabir v. Quarterman, 550 U.S. 233, 246 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001).   Consequently, post-AEDPA law governs this action.   Abdul-Kabir, 550 U.S. at 246; Penry, 532 U.S. at 792; Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007).

Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted).   See also Harrington v. Richter, ___ U.S.

___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011). Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court. Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision). "A state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Ponticelli v. Sec'y, Fla. Dep't of Corr., 690 F.3d 1271, 1291 (11th Cir. 2012)(internal quotations and citations omitted). The

"unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in Harrington v. Richter, 131 S. Ct. at 770.   First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision.   Id. (citations omitted).   Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review."   Stephens v. Hall, 407 F.3d 1195, 1201 (11th Cir. 2005).   The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits."   Cullen, 131 S. Ct. at 1398. Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order.   Id.

### B.   Federal Claim Must Be Exhausted in State Court

Ordinarily, a state prisoner seeking federal habeas relief must first "'exhaus[t] the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts 'the first opportunity to address the correct alleged violations of [the] prisoner's federal rights.'"   Walker v. Martin, ____ U.S. ____, 131 S.Ct. 1120, 1127 (2011)(quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991)).   This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts.   Rhines v. Weber, 544 U.S. 269, 274 (2005).   "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review process.   That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."  Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010)(citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) and Castile v. Peoples, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court that he urges the federal court to consider.   A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion. Anderson v. Harless, 459 U.S. 4, 7 (1983).   A state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Duncan v. Henry, 513 U.S. 364, 366 (1995)(per curiam).   "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"   McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."   Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002).   Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief . . . . ."   Smith, 256 F.3d at 1138. A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances.   First, a petitioner may obtain federal habeas review of a

procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.   House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008).   In Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309, 1318 (2012), the Supreme Court held that if "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim ..." when (1) "the state courts did not appoint counsel in the initial-review collateral proceeding" or (2) "appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective" pursuant to Strickland. Id. In such instances, the prisoner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id.   Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such a review is necessary to correct a fundamental miscarriage of justice.   House, 547 U.S. at 536; Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

## C.   Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).   Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).   Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.   Newland, 527 F.3d at 1184.   In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's

representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. 4, 8, 130 S. Ct. 13, 16 (2009); Cullen v. Pinholster, 131 S. Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970,

974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987)).

Similar to claims alleging ineffective assistance of trial counsel, the <u>Strickland</u> standard applies to ineffective assistance of appellate counsel claims.  <u>Eagle v. Linahan</u>, 279 F.3d 926, 938 (11th Cir. 2001) (citing <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11th Cir. 1987)).   When evaluating the prejudice prong of <u>Strickland</u> in relation to ineffective assistance of appellate counsel, the Court "must decide whether the arguments the [Petitioner] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal."   <u>United States v. Nyhuis</u>, 211 F.2d 1340, 1344 (11th Cir. 2000) (citing <u>Miller v. Dugger</u>, 858 F.2d 1536, 1538 (11th Cir. 1988), <u>cert. denied</u>, 531 U.S. 1131 (2001)).   "If [a court] conclude[s] that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal."   <u>Eagle</u>, 279 F.3d at 943 (citing <u>Cross v. United States</u>, 893 F.2d 1287, 1290 (11th Cir. 1990)).

### III.   Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court.  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).   Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d 1360 (11th

Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court.   Schriro, 550 U.S. at 474; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

Petitioner's trial by jury took place in Collier County, Florida, on March 21 through March 22, 2004.   Petitioner was charged with two separate burglaries and two separate rapes, with a mask, of the same victim, SL, arising on October 16, 2000, and June 14, 2002.   A rape kit was done following the October 16, 2000 incident.   As a result of this rape kit and the taking of the victim's blood, the State had the victim's DNA.   Following the June 14, 2002 incident, no rape kit was completed.   Instead, the victim saved a washcloth that contained biological evidence of the second sexual battery.

In a pre-trial hearing, defense counsel successfully moved for a severance of the October 16 incident.   Counsel agreed that the jury trying the case involving the June 14, 2002 incident would not be informed that defendant was also charged with a prior rape of the same victim.   The parties agreed that the State could introduce expert testimony that the victim's DNA profile was developed from her blood sample, but would not talk about where or when they obtained the victim's blood sample.   The two State expert's testified accordingly.   The jury convicted Petitioner of sexual battery of victim SL while wearing a mask (count two) and burglary of a dwelling with assault or battery (count four).   As a result, the court sentenced Petitioner to life in prison on the sexual battery count and a concurrent prison term of 30-years on the burglary with assault or battery count.   The appellate court affirmed Petitioner's judgment without discussion.   Petitioner did not

petition the Supreme Court for certiorari review.    Response at 2.    Petitioner then initiated

this action by timely filing the instant Petition on October 10, 2011.[2]

**Ground One**

Petitioner argues that the trial court erred by not allowing a "constitutionally

adequate *voir dire*" to determine whether prospective jurors had been exposed to pretrial

publicity.    Petition at 6.    Specifically, Petitioner contends that the local newspaper (the

Naples Daily News) generated high publicity about the crimes Petitioner was suspected

of committing and gave the perpetrator the nickname of the "naked burglar."    Id.    Based

on media coverage, Petitioner notes that defense counsel moved to change the venue.

The trial court denied counsel's motion to change venue (but granted counsel's motion to

suppress Petitioner's confession).    A newspaper article appeared on March 19, 2004,

the Friday before trial, stating that the "naked burglar's confession had been suppressed."

Id. at 8.

Petitioner states that defense counsel renewed his motion to change venue based

on the March 19 newspaper article.    Specifically, counsel requested permission to ask

the jury certain specific questions to determine the jurors' exposure to the newspaper

articles.    Id. at 8-9.    Petitioner notes that the trial judge denied defense counsel's motion

finding as follows:

> [T]he way I'm going to conduct *voir dire* is to inform the panel
> that everybody is entitled to trial by a fair and impartial jury
> which has to been predisposed to any particular view of the
> case or any particular knowledge of the case, and to that end,
> I will be inquiring of them as to any media coverage they may
> have been exposed to, either by news print, radio or TV.

---

[2] Respondent concedes that the instant Petition is timely filed, and the Court
agrees.    Response at 4.

> I will further ask them not to speak up and go into any detail
> about what they have read or heard of the case, but that we
> will – if they indicate they have read or heard of the case or
> have some knowledge of it, we will then bring them up to the
> bench and inquire of them as to the extent of the knowledge
> and any impact that it may have on their objectively and their
> ability to be fair and impartial.

Petition at 9 (citing Vol. III, T. 6-7).

Petitioner faults the questions the trial judge asked during the *voir dire* about their extent of their knowledge about the case, noting that the judge never referred to Petitioner as the "naked burglar." Id. at 9-10. Based on the judge's questions, Petitioner submits that none of the prospective jurors acknowledged hearing anything about the facts of the case or the crimes Petitioner was accused of committing. Id. at 10. Petitioner argues that it is impossible that none of the jurors had heard about the "naked burglar," comparing himself to the publicity received in the "O.J. Simpson" trial. Id. at 10-11. And, in fact, Petitioner notes that one prospective juror later during *voir dire* told the bailiff that she had read extensively about the case and was excused for cause without further inquiry. Id. at 10.

In Response, Respondent initially points out what Ground One does not raise a claim that Petitioner was denied a change of venue in an extensive pretrial publicity setting. Nor does Petitioner claim that any juror who sat on his jury was actually biased. Response at 12. Respondent notes that instead Ground One only faults the trial judge for not asking the specific content-based questions that defense counsel wanted to ask the venire. Id. at 12. Respondent acknowledges that this claim concerning the questions asked to the venire was raised, as a Sixth Amendment right to an impartial jury and a Fourteenth Amendment due process claim, on direct appeal; and therefore was

exhausted.  Id.   The appellate court denied Petitioner relief by issuing an order *per curiam* affirming the conviction and judgment.   Exh. 4.

The Constitution only requires that a defendant have an impartial jury.   And as a result, to guarantee an impartial jury, an adequate *voir dire* is necessary to identify unqualified jurors.   Morgan v. Illinois, 504 U.S. 719, 729 (1992) (internal citations omitted).

With regard to pretrial publicity, "primary reliance on the judgment of the trial court makes [especially] good sense" because the judge "sits in the locale where the publicity is said to have had its effect" and may base his evaluation on his "own perception of the depth and extent of news stories that might influence a juror."   Mu'Min v. Virginia, 500 U.S. 415, 427 (1991).   Prominence does not necessarily produce prejudice, and juror impartiality does not require ignorance.   See Irvin v. Dowd, 366 U.S. 717, 722 (1961) ("Jurors are not required to be "totally ignorant of all the facts and issues involved."); see also Price v. Allen, 679 F.3d 1315, 1321 (11th Cir. 2012). "[I]t is virtually impossible to shield juror's from every contact or influence that might theoretically affect their vote." Smith v. Phillips, 455 U.S. 209, 217 (1982).

Extensive knowledge in the community of either the crimes or putative criminal is not sufficient by itself to render a trial constitutionally unfair.   Murphy v. Florida, 421 U.S. 794 (1975).   The relevant question is not whether the community remembered the case, but whether the jurors had such fixed opinions that they could not judge impartially the guilt of the defendant.   Mu'Min, 500 U.S. at 430.   In Mu'Min, the Supreme Court rejected the defendant's invitation to make "content" questions about pretrial publicity a constitutional requirement.

The Supreme Court revisited and later reaffirmed <u>Mu'Min</u> in <u>Skilling v. United States</u>, 561 U.S. 358 (2010).   In <u>Skilling</u>, the Court had before it massive, intense, persistent pretrial publicity in Houston, Texas, about the Enron scandal and the culpability of Enron's officials.   The defendant was the chief operating officer who became the chief executive of Enron.   In denying a change of venue, the Court repeatedly cited and quoted <u>Mu'Min</u> with approval.

The state courts' decisions were not contrary to nor did they involve an unreasonable application of Supreme Court precedent.   Nor did the state courts' decisions involve an unreasonable determination of the facts based on the evidence presented.   Without a doubt, Naples, Florida, where Petitioner's trial occurred, is a much smaller community than Houston, Texas, mentioned in <u>Skilling</u>.   Nevertheless, the trial judge did not limit defense counsel's ability to determine whether the prospective jurors had been exposed to media coverage in Naples concerning the case.   Instead, the judge merely rejected defense counsel's proposed questionnaire that he wished to give to the jury.   The record reveals that the trial judge asked whether any potential juror knew anything about the case from the media, or any other source.   No prospective juror indicated that he or she had heard anything about the case in the media.   Exh. 1, Supp. R. at 356.

The record further shows that defense counsel was able to ask if any juror had subscribed to the Fort Myers News Press or the Naples Daily News, or had read the later on a daily basis.   Exh. 1, Supp. R. at 445-63.   Defense counsel chose not to inquire further of media exposure, even though he was not precluded from doing so. Nevertheless, even if the venire had heard something about the case, all jurors

acknowledged that they could base their verdict on the facts and evidence presented during the course of the trial.   And, as Petitioner acknowledges, one juror, who in fact indicated that she read extensively about the case, was immediately excused for cause. Exh. 1, Supp. R. 445-63.   Based on this record, the state courts' decisions were reasonable and not contrary to Supreme Court precedent.   The state court ensured that Petitioner's jury was fair and impartial.   Consequently, Petitioner is denied relief on Ground One.

**Ground Two**

Petitioner next argues that the trial court erred by allowing the introduction of evidence concerning his arrest when it failed to satisfy the admissibility requirements under the Williams[3] rule.   Petition at 13.   Specifically, Petitioner faults the trial court for allowing two Sheriff's Deputies, James Prince and Michael Craig, to testify about the circumstances of Petitioner's arrest for an unrelated crime.   Id. at 14.   Petitioner submits that the testimony about the circumstances of his arrest was admitted for purposes of showing *modus operandi* and identity.   Id. at 13.   Petitioner asserts that "there were few similarities between the two incidents."   Id.   Petitioner argues that he was prejudiced by the introduction of this evidence particularly in light of the prosecutor's closing argument[4] and the court's instructions to the jury.   Id. at 15-16.

---

[3]Williams v. State, 110 So.2d 654 (Fla. 1959).

[4]According to the Petition, during closing argument the prosecutor argued:

> [T]he testimony of the officers this morning deals with similar crimes, wrongs, or acts allegedly committed by the defendant, but only as it related to identify or *modus operandi*.   On October the 19th, 2002, he was arrested in a burglary in process, and what did he have on his hands? Gloves. Now, lets' think about this. There were no fingerprints at Ms. Levin's

In Response, Respondent initially asserts that Ground Two is not cognizable in this § 2254 petition because it concerns only matters of state law (an evidentiary ruling). Response at 18.   Further, Respondent argues that Ground Two is unexhausted and now procedurally defaulted because Petitioner did not fairly present the constitutional dimension of the claim by preserving it at trial and then raising it on direct appeal.   Id. at 19.   Specifically, Respondent notes that during trial the prosecutor contended, and the trial court found, that evidence concerning Petitioner's arrest on a subsequent burglary in progress was relevant to show identity and *modus operandi*.   Id. (citing Exh. 1, R. 1, T 76-82).   Defense counsel objected, but did not alert the trial court that evidence concerning the later burglary implicated any constitutional due process concerns.   Id. Thus, Respondent argues that failure to preserve this ground resulted in a waiver.   Id. at 19-20 (citing Jones v. State, 998 So. 2d 573-581-82 (Fla. 2008)(other citations omitted). And, Florida's preservation rules are regularly and consistently applied.   Id. at 20 (citing Rose v. State, 787 So. 2d 786, 797 (Fla. 2001) ("The failure of a party to get a timely ruling by a trial court constitutes a waiver of the matter for appellate review purposes.");

---

trailer or mobile home when she was attacked, the person wasn't wearing gloves, but you know what?  A person could be wearing gloves to get in so there wouldn't be any fingerprints, and then attack her not wearing gloves, and when he was arrested that day on October the 19th, 2002, he had his personal things that [were] close by where he was arrested, the two bags with we know his keys, and the one bag with the burglary tools, and right next to them the camera bag with the mask, and once again, when you look at the evidence, you look at it in terms of modus operandi or identity. So it's a little different than looking at the other evidence that you heard in this case.

Petition at 15-16.

Richardson v. State, 437 So. 2d 1091, 1094 (Fla. 1983) (defendant who did not pursue or obtain a ruling on his motion to strike testimony did not preserve his claim of trial error regarding the testimony for review).

Additionally, Respondent argues that Ground Two was not properly exhausted because the constitutional dimension of the claim was not raised on direct appeal.   Id. at 20.   Instead, Petitioner only raised the claim in terms of State law.   Id.   Consequently, Respondent argues that Ground Two is now procedurally defaulted under Florida law. Id. at 24-25.   And, Petitioner has not shown cause, prejudice, or a fundamental miscarriage of justice to overcome the default.   Id. at 25-26.   Turning to the merits, Respondent argues that the trial court's decision to permit introduction of evidence concerning Petitioner's prior arrest for burglary did not rise to the level of a due process violation particularly in light of the victim's testimony.   Id. at 26-27.

The Court agrees with Respondent that Ground Two, which raises a claim concerning the state's court evidentiary ruling, is not cognizable.   Indeed, a challenge to the admission of evidence under state evidentiary rules is a matter of state law that provides no basis for federal habeas corpus relief because the ground does not present a federal constitutional question.   28 U.S.C. § 2254(a). See also Swarthout v. Cooke, 562 U.S. 216, 219 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990) ("A writ of

habeas corpus is available in federal court only in cases of constitutional error.").   The limitation on federal habeas review to claims of federal constitutional error applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation.   Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988); Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976). [5] Consequently, Petitioner's due process claim based upon the admissibility of Williams rule evidence under Florida's evidentiary rules is not a cognizable claim for relief.

Further, even if the claim was cognizable, the claim was not exhausted and is now procedurally defaulted.   As previously discussed, before a federal court may grant habeas relief, a petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state postconviction motion.   Supra at 4-6. Petitioner initially did not preserve the constitutional issue at the trial level and later did not present in his direct appeal brief a federal due process claim based upon the admission of the Williams rule evidence.   See Exh. 2 at 17-20.   Instead, Petitioner raised the claim as only a violation of Florida law.   By failing to present the federal claim to the state courts, Petitioner deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."   Petitioner cannot return to state court to present a federal due process claim because state procedural rules preclude a second direct appeal. Consequently, the claim is unexhausted and procedurally defaulted.

---

[5]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

A procedural default for failing to exhaust state court remedies will only be excused in narrow circumstances.   First, Petitioner may obtain review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting therefrom. House, 547 U.S. 518, 536-537 (2006) Mize, 532 F.3d at 1190.   Second, Petitioner would have to show a fundamental miscarriage of justice.

To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."   Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999).   To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions.   United States v. Frady, 456 U.S. 152 (1982).   In other words, he must show at least a reasonable probability of a different outcome.    Henderson v. Campbell, 3 53 F.3 d 880, 892 (11th Cir.2003).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice.   Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Carrier, 477 U.S. at 495-96).   A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent.   Schlup v. Delo, 513 U.S. 298, 327 (1995).   This exception requires a petitioner's "actual" innocence.   Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).   To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error.   Schlup, 513 U.S. at 327.

Apparently recognizing his duty to establish cause and prejudice, or a fundamental miscarriage of justice, Petitioner generally asserts in his Reply that defense counsel and appellate counsel both rendered deficient performance that prejudiced him.   Reply at 2-7.   Additionally, Petitioner faults his limited access to the law library while detained at Blackwater Correctional Institution.   Id. at 7-8.

Ineffective assistance of counsel can constitute cause to excuse procedural default.   Eagle v. Linahan, 279 F.3d 926, 937 (11th Cir. 2001).   A petitioner seeking to show that counsel's ineffective assistance was the cause of a default must first prove his underlying ineffective assistance claim, establishing that counsel's performance was "so ineffective as to violate the Federal Constitution."   Carpenter, 529 U.S. at 451.   If a petitioner cannot establish a separate ineffective assistance of counsel claim, he cannot prevail on an argument that the ineffective assistance caused the procedural default.   Id.

To the extent that Petitioner argues that trial counsel's failure to object on due process grounds to the admission of the Williams rule evidence (and preserve the issue for appeal) and/or appellate counsel's failure to brief the issue in terms of a violation of his federal constitutional rights establish cause for his failure to present the due process claim on direct appeal, he cannot prevail because these claims are also unexhausted and procedurally defaulted.   Petitioner does not direct the Court to anywhere in the record where he raised these specific claims of ineffective assistance of defense and appellate counsel.   And, the Court's independent review confirms no such arguments were raised. Because Petitioner is now precluded from seeking review of that claim in a state habeas petition, Petitioner's ineffective assistance of appellate counsel claim is itself procedurally defaulted and cannot be considered as cause for the default of his federal due process

claim.   See Carpenter, 529 U.S. at 450-51 (concluding that a federal habeas court is barred from considering a procedurally defaulted ineffective assistance of counsel claim as cause for procedural default of another claim); Hill v. Jones, 81 F.3d 1015, 1029-31 (11th Cir. 1996) (noting that the Supreme Court's jurisprudence on procedural default dictate that procedurally default claims of ineffective assistance cannot serve as cause to excuse a default of a second claim).   Consequently, the ineffective assistance of counsel claims do not satisfy the cause and prejudice, or fundamental miscarriage of justice exceptions to overcome the procedural default.

Nor does Petitioner's unsubstantiated claim that he had limited access to the law library at Blackwater Correctional Institution establish sufficient cause to overcome the procedural default of this claim.   Petitioner fails to include any other facts supporting or describing how his alleged limited access to the law library at Blackwater Correctional prevented him from fully exhausting the federal dimension of his claims, particularly when most of these claims were handled by defense or appellate counsel.   Assuming arguendo that the limited access to the law library did establish cause, Petitioner has not shown prejudice.   Moreover, a mere possibility of prejudice will not waive a procedural default bar when other substantial evidence of guilt is present.   Sykes, 433 U.S. at 91, 97.   In this case, the jury heard testimony from DNA expert, Brian Higgins, that Petitioner's DNA profile matched the DNA left by the person who raped the victim (the chance of another Caucasian male matching that same sample was one in 2.3 quadrillion).   See Exh. 30, Appx. at 93.   Accordingly, Ground Two is dismissed as either not cognizable and/or as unexhausted, and now procedurally defaulted.

**Ground Three**

Petitioner next turns to the charges that were severed from his case to argue that appellate counsel rendered deficient performance on direct appeal for not raising a claim that the state was illegally permitted to introduce evidence from the severed case. Petition at 19.   Specifically, Petitioner argues that the State's expert, Tina De La Roche, testified as to the results of tests and procedures performed on evidence collected from the October 16, 2000 incident against the victim, which was severed from his trial concerning only the June 14, 2002 incident against the victim, pertaining to liquid blood and a blood stain card that provided the State with the victim's DNA.[6]   Id. at 20.

---

[6]The Petition details the following exchange between the court, counsel, and the witness, which the Court confirmed in the record:

> MR. NAGLE:   Judge, I'm going to object.   Can we approach?
>
> THE COURT:   Yes.
>
> (At this time, a bench conference was held outside the hearing of the jury).
>
> MR. NAGLE:   Judge, this individual simply did the blood— submitted the blood test for Ms. Levine.   I think it needs to be made clear that that's what the State's referring to, not all the DNA in this case.   She was not involved in any of the tests of the washcloth.
>
> MR. MARSCA:   That's correct.   I'll clarify that.
>
> THE COURT: Okay. (AT this time, the Bench Conference ended and the following was held in the hearing of the Jury)
>
> BY MR. MARESCA:   Ma'am, in this specific case, did there come a point in time within which you—you did some—the DNA profile for Ms. Levine?
>
> Yes, I did.

In Response, Respondent notes that Petitioner raised this claim of ineffective assistance of appellate counsel in his motion for postconviction relief and therefore the claim is exhausted.   Response at 30.   Respondent argues that Petitioner cannot satisfy Strickland's performance prong because trial counsel did not preserve the claim for review.   Id. at 31.   Respondent further notes that when a matter is not preserved for appeal, the appellate court can only consider the matter if the alleged error constitutes a "fundamental error."   Id. at 32.   Respondent argues that Petitioner did not allege or demonstrate such a fundamental error in his state postconviction proceeding.   Id. Moreover, Respondent points out that the appellate court clearly did not decipher a fundamental error arising therefrom as evidenced by the appellate court's silent denial of the petition.   Id. at 33.

The record confirms that Petitioner raised this claim of ineffective assistance of appellate counsel in a petition for writ of habeas corpus.   See Exh. 9.   The appellate court denied Petitioner relief on his petition, and later denied his motion for rehearing and request for a written opinion.   Exh. 10; Exh. 12.   The state court's decision was neither

---

Okay. How did that come about in terms of what did you use to do that, or what was used do that?

A liquid blood was submitted to the laboratory, and a blood stain card was made from that, and what that means is just the liquid blood is dried on a card to preserve it for a longer period of time. Once it's in a dry form, it's put in freezer or refrigerated situation, and it will last for a long time.   And then I take a cutting from the stain card, and do the DNA testing on that.   So it's actually coming from the liquid blood.

Petition at 21; see also Exh. 30 at 55-60.

contrary to nor an unreasonable application of Supreme Court precedent.   Nor was the decision an unreasonable application of the facts in light of the evidence presented.

As previously discussed, <u>Strickland</u> applies to claims involving the ineffective assistance of appellate counsel.   <u>Supra</u> at 6-8.   Indeed, appellate counsel could not raise on appeal a claim that was not preserved by trial counsel, absent that claim amounted to a fundamental error.   <u>See</u> <u>Farina v. Sec'y of Dep't of Corr.</u>, 536 F. App'x 966, 980 (11th Cir. 2013).   This claim does not amount to a fundamental error.   Thus, Petitioner cannot show deficient performance as required by <u>Strickland</u>.

Further, Petitioner cannot show he was prejudiced by appellate counsel's failure to raise the claim on appeal.   The appellate court's denial of his petition shows what the appellate court thought of Petitioner's argument.   The record shows that Petitioner was initially charged with two counts of rape against the same victim arising on different dates: the first in October of 2000 and the second on June 15, 2002.   Defense counsel moved for and was granted a severance of the two rape cases.   Both the State and defense counsel agreed that the State would not inform the jury that the defendant was also charged with a prior rape of the same victim.   The parties also agreed that the State could introduce expert testimony that the victim's DNA profile was developed from her blood sample but would not "talk about" where or when they obtained the victim's blood sample.   The record evidences that the State abided by the court's ruling, and no mention was made of the October 2000 offense, nor did the expert witness allude to the fact that the evidence was gathered from another case against Petitioner.   <u>See</u> Exh. 30, Appx. at 60. 65.   Thus, a review of the record shows that defense counsel had no reason to preserve the claim because defense counsel successfully moved to sever the initial

charges involving the same victim and agreed that although establishing the victim's DNA would be introduced from evidence from the initial rape, reference to that rape would not occur.   Accordingly, Petitioner has not shown that the appellate court's decision denying his petition was contrary to or involved an unreasonable application of U.S. Supreme Court precedent.   Petitioner is denied relief on Ground Three.

**Ground Four**

Petitioner faults appellate counsel for not raising a claim that the trial court "unjustly" denied defense counsel's motion to continue, filed three days before trial. Petition at 25.   Petitioner argues that the trial court's refusal to continue the case caused him prejudice considering the State had only one week earlier filed a second amended information, amended witness list, a notice of <u>Williams</u> rule evidence, an amended notice of <u>Williams</u> rule evidence, and additional discovery relating to other persons who may have had relevant information concerning the case.   <u>Id.</u> at 26.   As to the amended information, Petitioner opines that the second amended information contained a "substantive" change by including an additional count of sexual battery on the same victim, on the day already at issue, and a mask enhancement.   <u>Id.</u> at 28.

In Response, Respondent argues that the claim was not preserved at trial. Response at 33.   Thus, Respondent argues that appellate counsel did not render deficient performance under <u>Strickland</u>.   <u>Id.</u>   With regard to the prejudice prong of <u>Strickland</u>, Respondent argues the record shows that the trial judge ensured that the defense counsel had an opportunity to review the additional discovery by directing that the prosecutor fully disclose the witness' statements in order to enable defense to depose any witnesses before trial, and provided an opportunity for a hearing on any prejudicial

evidence under the state's discovery rules.   Id. at 34 (citing Exh. 9 at 9).   Further, Respondent notes that Petitioner cites to nothing in the record to show that there was insufficient time for defense counsel to address the amendment of his charging document. Id. at 35.   Thus, under the circumstances, Respondent argues it was objectively reasonable for the appellate court to conclude that the denial of the continuance fell within the court's discretion and was not so arbitrary as to violate due process.   Id.

The record reveals that Petitioner raised this claim of ineffective assistance of appellate counsel in his state petition for writ of habeas corpus.   Exh. 9.   The appellate court denied the petition, Exh. 10, and later denied rehearing and the issuance of a written opinion.   Exh. 12.   The appellate court's decision was not an unreasonable application of or contrary to Supreme Court precedent.   Nor was the decision an unreasonable application of the facts based on the evidence presented.

Petitioner has not established that appellate counsel rendered deficient performance for failing to raise this argument on appeal.   Counsel is permitted to winnow out weaker arguments from his appellate brief and in fact doing so is the preferred practice on appeal.   Jones v. Barnes, 463 U.S. 745, 751-752 (1983).   Here, appellate counsel wisely chose not raise this claim on appeal.   "Trial judges necessarily require a great deal of latitude in scheduling trials."   Morris v. Slappy, 461 U.S. 1, 11-12 (1983).   In that regard, "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for a delay violates the right to the assistance of counsel."   Id. (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)).   "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.   The answer must be

found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Ungar, 376 U.S. at 589-90 (citations omitted). Here, Petitioner cannot point to any harm caused by the denial of the continuance, nor is there any evidence that defense counsel was not prepared to proceed to trial. And, the appellate court's decision to deny Petitioner's state petition for writ of habeas corpus indicates what the appellate court would have done had appellate counsel raised the claim on direct appeal. Accordingly, Petitioner is denied relief on Ground Four.

**Ground Five**

Petitioner faults appellate counsel for failing to obtain a transcript of the sentencing proceedings. Petition at 32. Petitioner submits that he mailed appellate counsel several letters in early 2005 specifically requesting that counsel provide a copy of the sentencing transcript with his brief on appeal, and noting that there were "errors" contained in his "P.S.I. and scoresheet." Id. at 34. Petitioner states that it was not until mid-2006 that appellate counsel told him that there was no transcript of the sentencing hearing and that defense counsel had stipulated to what occurred at sentencing. Id. Petitioner argues that several errors occurred during sentencing that the appellate court could not review without having the benefit of the transcript. Id. Consequently, Petitioner argues that he was denied his due process rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution as a result of not having a copy of the sentencing transcript. Id. at 35.

In Response, Respondent notes that Ground Five contains only conclusory allegations lacking specific factual foundation. Response at 36. Turning to the merits,

Respondent argues that the appellate court's denial of Petitioner's state petition raising an ineffective assistance of appellate counsel claim did not amount to an unreasonable application of Supreme Court precedent.   Id.

The record confirms that Petitioner raised this claim on ineffective assistance of appellate counsel in his state petition, Exh. 9, and the appellate court denied the Petition, Exh. 10, and later denied Petitioner's motion for rehearing and issuance of a written opinion, Exh. 12.   The Court finds the state court's decision was not an unreasonable application of or contrary to Supreme Court precedent.   Nor was the decision an unreasonable application of the facts based on the evidence presented.

Appellate counsel cannot be faulted for failing to raise a meritless issue.   See e.g. Bates v. Sec'y Fla. Dep't of Corr., 768 F.3d 1278, 1299 (11th Cir. 2014)(citations omitted) (defense counsel is not ineffective when failing to raise a meritless issue). The absence of a perfect transcript does not violate due process absent a showing of specific prejudice. White v. State of Fla. Dep't of Corr., 939 F.2d 912 (11th Cir. 1991), cert. denied sub. nom., White v. Singletary, 503 U.S. 910 (1992).   Petitioner has not alleged facts, much less pointed to anywhere in the record, that show he was prejudiced by the absence of the sentencing transcript.   The record indicates that defense counsel stipulated to what occurred at sentencing.   Accordingly, Petitioner is denied relief on Ground Five.

**Ground Six**

Petitioner faults appellate counsel for not raising a claim that the trial judge and the prosecutor "reached an agreement" to allow "false evidence."   Petition at 36. Specifically, Petitioner again references testimony from the State's expert, Tina R. De La Roche, which Petitioner alleges "was designed to create the false illusion that the

evidence being testified about . . . pertaining to the liquid blood and blood stain card collected in the October 16, 2000 incident was collected in this case at trial."   Id. at 37-38.

In Response, Respondent notes that Ground Six is exhausted only to the extent it raises an ineffective assistance of appellate counsel claim.   Response at 37. Respondent further notes that although Petitioner argues that his due process rights were violated and cites Giglio v. United States, 405 U.S. 150 (1972), the instant claim does not raise a Giglio claim; and, if it did, it would be unexhausted and procedurally defaulted. Id.   Nevertheless, defense counsel did not preserve for review that the state knowingly used false testimony through its witness.   Therefore, Respondent argues that Petitioner cannot show appellate counsel rendered deficient performance.   Id. at 37-38. Regarding the prejudice prong of Strickland, Respondent argues that Petitioner does not show that the testimony was in fact false.   Respondent submits "[t]hat the expert utilized standards from the victim obtained in 2000 does not mean that the expert testified falsely regarding the testing of evidence collected in connection with the 2002 sexual battery." "[Petitioner] fails to appreciate that his trial counsel did not want details regarding the testing in relation to the 2000 sexual battery to be elicited."   Id.

The record confirms that Petitioner raised this claim of ineffective assistance of appellate counsel in his state petition, Exh. 9, and the appellate court denied Petitioner relief, Exh. 10, and later denied his motion for rehearing and motion for issuance of a written opinion, Exh. 12.   The Court finds the state court's decision was not an unreasonable application of or contrary to Supreme Court precedent.   Nor were the decisions an unreasonable application of the facts based on the evidence presented.

Appellate counsel's performance cannot be deemed deficient for failing to raise a matter that defense counsel did not preserve at trial, unless it amounts to a fundamental error.  See Farina v. Sec'y, Fla. Dep't of Corr., 636 F. App'x at 980.   No fundamental error is presented by this claim.   The Court notes that Ground Six is related to Ground Three to the extent it concerns the same evidence that the State's expert Tina De La Roche testified about.   In Ground Three, Petitioner faulted appellate counsel for not raising the argument that the State was allowed to elicit evidence concerning the victim's DNA from evidence gathered from that initial incident when that initial charge was severed.   In discussing Ground Three, the Court noted that the record revealed no reference to the severed charge.   Now, Petitioner argues in Ground Six, that due to the fact the severed charge was not mentioned, the jury was misled to believe that the evidence of the victim's DNA arose from the second rape of the victim.

What Petitioner takes issue with involved a matter of defense strategy.  See Green v. Nelson, 595 F.3d 1245, 1251 (11th Cir. 2001) (citations omitted) (noting that the weighing of compelling positive and negative consequences that may flow to a defendant from a particular choice amounts to defense strategy).   Defense counsel successfully severed the initial rape charges, but agreed to allow discussion of evidence of the victim's DNA that came from the initial rape kit.  See Exh. 30 at 6-9.  The victim did not submit to a rape kit after the second rape.   It is evident that defense counsel did not want details concerning the testing in relation to the 2000 sexual battery to be elicited.   Appellate counsel cannot be faulted for failing to raise a meritless issue.   Moreover, Petitioner cannot show prejudice as a result of introduction of the victim's DNA from the rape kit because undoubtedly the victim could have provided another DNA sample if necessary.

Additionally, other DNA evidence was presented at trial concerning the second rape (that was taken from the victim's washcloth).   Accordingly, Petitioner is denied relief on Ground Six.

**Ground Seven**

Ground Seven is the first of three grounds that each contain two parts: a trial court error claim and a related ineffective assistance of defense counsel claim.   First, Petitioner argues that the trial court committed "prejudicial reversible error" by allowing into evidence testimony concerning a collateral crime, which had been severed from his trial.   Petition at 43.   Second, Petitioner faults trial counsel for failing to object and/or move for a mistrial when the evidence was presented.   Id.   Specifically, Petitioner explains that he was accused of sexual battery on victim, SL.   The first offense was committed on October 16, 2000, after which a rape kit was done on the victim and blood was obtained.   The second offense against SL occurred on June 14, 2002, and no rape kit was done, but the victim produced a washcloth that contained biological evidence of the second sexual battery.   Id. at 44.   From the washcloth, the laboratory confirmed a DNA profile that matched the victim and one that matched the Petitioner.   Id.   The victim's DNA profile was obtained from the bloodstain card made from the blood draw from the rape kit in the first sexual battery.   Thus, Petitioner contends the State had no biological evidence tying the victim to the second incident absent reliance on the victim's DNA taken from the first incident.   Id.   Petitioner contends that the victim could not identify the assailant that raped her (due to the perpetrator wearing a mask), so the DNA evidence became a "main feature" at trial.   Id. at 45.

In Response, Respondent submits that the trial court error portion of Ground Seven is not cognizable because it concerns only a matter of state law and is unexhausted and now procedurally defaulted because Petitioner did not preserve his claim and then raise the claim on direct appeal.   Response at 39.   With regard to the ineffective assistance of trial counsel portion of this claim, Respondent notes that Petitioner raised the claim in his Rule 3.850 motion.   Id.   The postconviction court denied Petitioner relief finding that trial counsel did attempt to limit the manner in which the evidence was used, the trial court issued a favorable ruling allowing introduction of the evidence for only a limited purpose; and, therefore Petitioner failed to show defense counsel was ineffective within the meaning of Strickland.   Id.

Respondent's argument is well taken with respect to the first portion of Ground Seven.   Any trial court error claim concerning the evidentiary ruling is not cognizable. See supra at 15-16.   Additionally, the claim is unexhausted and now procedurally defaulted.   Supra at 16-18. And, Petitioner has not shown cause and prejudice, or a fundamental miscarriage of justice to overcome the procedural default.   Id.

Turning to the ineffective assistance of defense counsel claim, the record confirms that Petitioner raised this claim in his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850 (hereinafter "3.850 motion").   Exh. 21.   In denying Petitioner relief on this claim, the postconviction court found as follows:

> Defendant claims that counsel was ineffective by failing to object to the admission of collateral crime evidence testimony after the trial court granted Defendant's motion for severance. Specifically, Defendant challenges the testimony of witness Tina De La Roche that was used to establish that a DNA sample taken from the victim of an earlier sexual assault matched the DNA sample taken from the victim of the offense with which Defendant was charged.   Defendant claims that

the "State was allowed to present this testimony, without objection, never informing the jury that the blood was from a prior case." Motion, p. 4.

The record reflects that this issue was addressed in a pre-trial motion hearing held on March 14, 2004.   Trial counsel argued in support of his motion for severance that "our position is that there's going to be evidence that's applicable to one case that's not going to be applicable in the other case." T. 4.   Pertinent pages of the March 14, 2004 [hearing] are attached herein.   When the state offered to introduce the evidence without reference to any specific time, trial counsel argued that the "whole idea of a severance is that we . . . deal with only things from the June incident, not dealing with things from the October." T. 7.   The trial court then asked trial counsel if he had an objection to the witness testifying to the fact that she made these comparisons to known samples," to which trial counsel answered he did not.   T. 9. The trial court then instructed the attorneys to work out the details of a motion in limine in this regard and the proceedings moved on to other matters.   As the record reflects trial counsel's attempt to prevent the evidence from being admitted and the trial court's decision to allow it in a limited manner, Defendant has failed to demonstrate how counsel was ineffective within the meaning of Strickland.

Exh. 23 at 1-2.

The State courts' denial was not contrary to nor an unreasonable application of Strickland.   Nor did the decision rely on an unreasonable application of the facts in light of the evidence presented. The record confirms that defense counsel objected to the introduction of the evidence.   The trial judge agreed and limited the scope of the evidence.   Further, defense counsel made a reasonable strategic decision in limiting damaging details as to the testing involved.   See Green, 595 F.3d at 1251 (citations omitted).   Moreover, to the extent Petitioner argues that absent the introduction of this evidence the State would have had no biological evidence tying the victim to the second rape, other evidence would have placed the victim at the second rape, including testimony from the investigating officers and/or from the victim.   Accordingly, the first portion of

Ground Seven is dismissed as not cognizable and/or unexhausted and now procedurally defaulted.   The second portion of Ground Seven is denied on the merits.

### Ground Eight

Ground Eight also contains two subparts.   First, Petitioner submits that the trial court committed an error by refusing to allow into evidence "reverse" <u>Williams</u> rule evidence.   Petition at 49.   Specifically, Petitioner submits that testimony concerning similar crimes that were being committed in Collier County while he was behind bars should have been allowed into evidence.   <u>Id.</u> at 50.   Second, Petitioner argues defense counsel rendered ineffective assistance within the meaning of <u>Strickland</u> for failing to object.   <u>Id.</u> at 49.

In Response, Respondent initially notes that the trial court error portion of this claim is not cognizable because it concerns a State court's evidentiary ruling.   Response at 40. Furthermore, Respondent contends the ground is unexhausted and now procedurally defaulted because Petitioner did not raise a constitutional claim at trial and on direct appeal.   <u>Id.</u>   With respect to the ineffective assistance of counsel portion of this claim, Respondent argues that the postconviction court's decision was not contrary to nor an unreasonable application of <u>Strickland</u>.   <u>Id.</u> at 41.

Respondent's argument is well taken with respect to the first portion of Ground Eight.   Any trial court error claim concerning the evidentiary ruling is not cognizable. <u>See</u> <u>supra</u> at 15-16.   Additionally, the claim is unexhausted and now procedurally defaulted.   <u>Supra</u> at 16-17.   And, Petitioner has not shown cause and prejudice, or a fundamental miscarriage of justice to overcome the procedural default.   <u>Supra</u> at 17-18.

Turning to the ineffective assistance of counsel claim, Petitioner raised the claim in his Rule 3.850 motion.   Exh. 21.   The postconviction court entered an order denying Petitioner relief, noting as follows:

> Defendant alleges ineffective assistance of counsel by failing to object to the trial court's refusal to admit Defendant's "proffered reverse Williams rule evidence." Motion, p. 8. Specifically, Defendant sought to present evidence "that the crimes of burglary of a dwelling with a sexual battery committed therein were still being perpetrated [by perpetrators running around naked] upon the local residents of Collier County while he was incarcerated." Motion, p. 8.
>
> The State cites to Savino v. State, 576 So. 2d 893 (Fla. 1990) to support its position that Defendant is not entitled to relief. In Savino, the Florida Supreme Court stated that the "test for admissibility of similar-fact evidence is relevancy.   When the purported relevancy of past crimes is to identify the perpetrator of the crime being tried, we have required a close similarity of facts, a unique or 'fingerprint' type of information, for the evidence to be relevant." Id. at 894.   In its response, the State argues that the evidence Defendant sought to offer was not relevant because Defendant was never charged as the "Naked Burglar," nor were there any allegations that he was naked when he committed the burglary. The Court is inclined to agree with the State.   Defendant has failed to demonstrate how counsel was ineffective within the meaning of Strickland.

Exh. 23 at 2-3.

The State courts' denial was not contrary to nor an unreasonable application of Strickland.   Nor did the decision rely on an unreasonable application of the facts in light of the evidence presented.   Considering the trial court refused to admit into evidence the "reverse Williams rule evidence," it's highly improbable that defense counsel's objection to the ruling would have encountered a favorable ruling.   Thus, Petitioner cannot show the required prejudice under Strickland.   Accordingly, the first portion of Ground Eight is

dismissed as not cognizable, or as procedurally defaulted.   The second portion is denied on the merits.

**Ground Nine**

Ground Nine also contains two subparts.   First, Petitioner raises a claim of trial court error for not conducting a Frye[7] hearing before admitting DNA evidence through the state's expert testimony.   Petition at 1.   Second, Petitioner argues that defense counsel rendered ineffective assistance in violation of Strickland for not requesting a Frye hearing. Id.

In Response, Respondent asserts that the trial court error portion of this claim is unexhausted and procedurally defaulted because Petitioner did not fairly present the constitutional dimension of this claim by preserving it at trial and then raising it on direct appeal.   Response at 42.   With regard to the ineffective assistance of counsel portion of the claim, Respondent asserts that the postconviction court's order was not an unreasonable application of Strickland.   Id.

Petitioner's failure to preserve at trial and then raise the federal dimension of this claim on direct appeal results in a procedural default of the first portion of Ground Nine. Supra at 16-17.   And, Petitioner has not overcome the procedural default by showing cause and prejudice, or a fundamental miscarriage of justice.   Supra at 17-18.

With regard to the ineffective assistance of counsel claim, Petitioner raised the claim in his Rule 3.850 motion, Exh. 21, and the postconviction court issued an order denying Petitioner relief finding as follows:

> Defendant claims that counsel was ineffective by failing to request a Frye hearing before admitting into evidence the

---

[7] Frye v. United States, 293 F. 1013 (D.C. 1923).

testimony of the State's expert witness on DNA evidence. Specifically, Defendant asserts that counsel was ineffective for failing to challenge the 'statistical analysis employed by the State's "expert" witness.'   Motion, p. 13.

In its response, the State argues that the experts sufficiently established their qualifications and that case law holds that an expert need not be a statistician himself to testify as to statistical results.   Branch v. State, 952 So. 2d 470, 483 (Fla. 2006).   Rather, a "sufficient knowledge of the authorities pertinent to the database is an adequate basis on which to render an opinion." Id. (quoting Butler v. State, 842 So. 2d 817, 828 (Fla. 2003)).

The record reflects that there were two expert witnesses who testified to DNA evidence and that both were questioned as to their knowledge and qualifications.   Trial Transcript, 47-55, 68-71.   The record also reflects that trial counsel extensively cross-examined them on their knowledge.   T. 59-66, 94-102. As the record reflects that the witnesses appeared to have a "sufficient knowledge of the authorities pertinent to the database," and that trial counsel questioned them on their knowledge and expertise, Defendant has failed to demonstrate how counsel was ineffective within the meaning of Strickland.

Exh. 23 at 3.

The State courts' denial was not contrary to nor an unreasonable application of

Strickland.   Nor did the decision rely on an unreasonable application of the facts in light

of the evidence presented.   Florida adopted the standard set forth in Frye in Stokes v.

State, 548 So. 2d 188, 195 (Fla. 1989), which provides that "scientific evidence is not

admissible unless the thing from which the deduction is made is sufficiently established

to have gained general acceptance in the particular field in which it belongs."   Id. (internal

quotation marks omitted); see also Zack v. State, 911 So. 2d 1190, 1197 (Fla. 2005).

Under Florida law, a Frye hearing is only required when the science at issue is new or

novel.   Zack, 911 So. 2d at 1198.   Florida law provided that DNA testing is not new or

novel when Petitioner's trial took place on March 22 and 23, 2004.   Zack, 911 So. 2d at

1198, n. 3; McDonald v. State, 952 So. 2d 484 (Fla. 2006).   Thus, if defense counsel had moved for a Frye hearing, the request would have been rejected.   Nevertheless, it appears Petitioner confuses the Frye standard under Florida law with the requirement that the expert witnesses be sufficiently qualified before testifying.   The postconviction court reasonably determined that the record refuted Petitioner's ineffective assistance of defense counsel claim because defense counsel did in fact question the State's experts on their qualifications.   Accordingly, the first portion of Ground Nine is dismissed as unexhausted and now procedurally defaulted.   The second portion of Ground Nine is denied on the merits.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The Florida Attorney General is **DISMISSED** as a named Respondent.

2.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED.**   Grounds Two, Seven (a), Eight (a), and Nine (a) are **DISMISSED** as either not cognizable or as unexhausted and now procedurally defaulted.   Grounds One, Three, Four, Five, Six, Seven (b), Eight (b), and Nine (b) are **DENIED.**

3.   The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

### CERTIFICATE OF APPEALABILITY AND

### LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability on either petition.   A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but

must obtain a certificate of appealability ("COA").   28 U.S.C. § 2253(c)(1); <u>Harbison v. Bell</u>, 556 U.S. 180, 184 (2009).   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further", <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003)(citations and internal quotation marks omitted).   Petitioner has not made the requisite showing in these circumstances.   Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

    **DONE** and **ORDERED** in Fort Myers, Florida on this 4th day of March, 2015.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**


SA: alr
Copies: All Parties of Record